UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RODNEY WHITE,

                                        Plaintiff,

          v.                                                      5:11-CV-309
                                                                      (FJS/ATB)

NEW YORK STATE OFFICE OF CHILDREN
AND FAMILY SERVICES, GLADYS CARRION,
and ANTHONY HOUGH,

                                        Defendants.
_____

**APPEARANCES**　　　　　　　　　　　　**OF COUNSEL**

**ISEMAN CUNNINGHAM RIESTER**　　　**JOHN F. QUEENAN, ESQ.**
**& HYDE LLP**　　　　　　　　　　　　　**BRIAN M. CULNAN, ESQ.**
9 Thurlow Terrace
Albany, New York 12203
Attorneys for Plaintiff

**THE GLENNON LAW FIRM P.C.**　　　　**PETER J. GLENNON, ESQ.**
160 Linden Oaks Drive
Rochester, New York 14652
Attorneys for Plaintiff

**CALIHAN LAW PLLC**　　　　　　　　　**ROBERT B. CALIHAN, ESQ.**
16 West Main Street
Rochester, New York 14614
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**　　　　　**TIMOTHY P. MULVEY, AAG**
**STATE ATTORNEY GENERAL**　　　　　**HEATHER R. RUBINSTEIN, AAG**
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendants' motion for partial summary judgment as to Plaintiff's claims against Defendant Gladys Carrión pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 66.

### II. BACKGROUND

Plaintiff Rodney White, a white male, has been an employee of Defendant New York State Office of Children and Family Services ("OCFS") since 1985. *See* Dkt. No. 66-7 at ¶ 1; Dkt. No. 1 at ¶ 3. Defendant Gladys Carrión was the Commissioner of OCFS during the timeframe relevant to this litigation. *See* Dkt. No. 66-7 at ¶ 3. In October 2007, Plaintiff was appointed Director of the Finger Lakes residential juvenile detention facility ("Finger Lakes"). *See id.* at ¶ 8.

Beginning in approximately June 2010, Defendant OCFS Assistant Commissioner Hough and Deputy Commissioner Burrell had several discussions about Plaintiff's performance and the state of Finger Lakes because there had been a recent Department of Justice investigation. *See id.* at ¶ 12. On August 4, 2010, Plaintiff was removed from his position as Director of Finger Lakes. *See id.* at ¶ 15. Ms. Burrell advised Defendant Carrión about the decision to remove Plaintiff prior to August 4, 2010. *See id.* at ¶ 20. Further, Ms. Burrell confirmed the decision to remove Plaintiff in a memorandum she sent to Defendant Carrión. *See id.* at ¶ 21. Defendant Carrión has no memory of when and why Plaintiff was removed from his position, *see id.* at

¶ 22, but surmises that she "probably" was involved, *see* Dkt. No 69-6, Ex. "F," Carrión Depo. at 71:20-25.

Based on these allegations, Plaintiff asserts two causes of action. First, he asserts that Defendant OCFS discriminated against him because of his race in violation of Title VII. *See* Dkt. No. 1 at ¶¶ 55-56. Second, he alleges, pursuant to 42 U.S.C. § 1983, that Defendants Carrión and Hough violated his right to Equal Protection under the United States Constitution. *See id.* at ¶¶ 57-61.

Defendants raise a single issue in support of their motion, namely that Defendant Carrión is entitled to summary judgment because she was not personally involved in the decision to remove Plaintiff from his position.[1] *See generally* Dkt. No. 66-8.

## III. DISCUSSION

**A.     Standard of review**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, an entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[I]n ruling on a motion for summary judgment, the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of

---

[1] Defendants' motion implicates only Plaintiff's 42 U.S.C. § 1983 cause of action, which accuses Defendant Carrión of violating his constitutional right to equal protection.

that party, and to eschew credibility assessments[.]" *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

As recounted above, Defendants' motion for summary judgment raises a single issue, i.e., whether Defendant Carrión was personally involved in Plaintiff's allegedly unconstitutional removal from his position as director at Finger Lakes. "[P]ersonal involvement is a question of fact[.]" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Furthermore, Defendants "bear[] the burden of establishing that no such dispute exists." *Id*. (citation omitted). If the undisputed facts demonstrate that Defendant Carrión was not personally involved in the underlying constitutional violation, she would be entitled to judgment as a matter of law. *See Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (stating that "undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case" (citations omitted)).

**B.     Supervisory liability under § 1983**

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). To show personal involvement on the part of a supervisory official, the Second Circuit requires a plaintiff to show that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[2] In this case, Plaintiff alleges that Defendant Carrión participated directly in the alleged constitutional violation and/or created a policy or custom under which unconstitutional practices occurred.

### *1. Direct involvement*

Plaintiff alleges that Defendant Carrión was directly involved in the process to remove him from his position as Director of Finger Lakes. *See* Dkt. No. 69-26 at 4. Plaintiff points out that Defendant Carrión was informed of the plan to remove him prior to its finalization, which required her signature. *See id*; *see also* Dkt. No 69-7, Ex. "G," Burrell Depo. at 172:12-15. Further, Ms. Burrell testified at her deposition that she would likely have discussed Plaintiff's termination prior to its approval with Defendant Carrión. *See* Dkt. No. 69-25 at ¶¶ 70-71. In addition, Defendant Hough stated the following when asked whether Defendant Carrión was consulted, "I'm pretty sure she was, but I can't sit down here and say for sure. But I think –

---

[2] The Supreme Court subsequently addressed supervisory liability claims in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), stating that, "[i]n a § 1983 suit or a *Bivens* action -- where masters do not answer for the torts of their servants -- the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677. Although the Second Circuit has recognized a conflict between *Iqbal* and *Colon*, *see Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012), it has not squarely decided which of the five *Colon* factors remain viable after *Iqbal*. However, the Second Circuit has held that whether a *Colon* factor remains viable turns on "whether that [factor] . . . reflects the elements of the underlying constitutional tort." *Turkmen v. Hasty*, 789 F.3d 218, 250 (2d Cir. 2015) (stating that "plausibly pleading that a defendant 'participated directly in the alleged constitutional violation' -- one form of personal involvement enumerated in *Colon*, 58 F.3d at 873 -- could establish direct, as opposed to vicarious, liability"). Plaintiff's claim against Defendant Carrión only implicates the first and part of the third *Colon* factors. Each of Plaintiff's theories of personal involvement is viable in the § 1983 equal protection context because either, if proved, would satisfy the elements of the underlying cause of action. *See Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010). Thus, *Iqbal* is not a barrier to Plaintiff's equal protection claim against Defendant Carrión.

there's – I'm pretty sure she was. I can't say." *See* Dkt. No. 69-3, Ex. "B," Hough Depo. at 198:24-199:5. When asked why he said she likely knew, he responded, "It's a DOJ facility, which is a high one, which would be one of our highest profile facilities, and I just don't -- you just don't remove directors without, you know, the deputy commissioner informing the commissioner or the executive deputy commissioner." *See id.* at 199:6-14.

Furthermore, Ms. Burrell testified that she "consulted [Defendant Carrión]" regarding the decision to remove Plaintiff. *See* Dkt. No. 69-7 Ex. "G," at 167:13-14. When asked to describe her conversation with Defendant Carrión, Ms. Burrell stated:

> I would say to [Defendant Carrión] that, you know, [Defendant Hough] brought it to my attention that he is going to move [Plaintiff], and he shared with me, you know, his reasons for doing it. And I probably -- I don't remember this exactly, but I probably would have said, you know, given your Friday calls to me, and the problems with DOJ, that I agree with [Defendant Hough] that this is a good move. But I don't have that in writing anywhere. I just know that's sort of my style.

*See id.* at 173:16-174:2. Moreover, Defendant Carrión herself stated that, although she did not specifically recall her involvement in Plaintiff's removal, she "probably" played a role. *See* Dkt. No 69-6, Ex. "F," Carrión Depo. at 71:14-17. Defendant Carrión explained that, "because it was such a, you know, a facility we were so focused on the facilities that were problems and that we were having issues with and we had the DOJ, that I probably would have been consulted or advised." *See id.* at 71:20-25.

These facts are sufficient to give rise to a triable issue of fact regarding Defendant's participation in the *decision* to demote Plaintiff.[3] *See Moore v. Metro. Transp. Auth.*, 999 F.

---

[3] Defendants argues that Defendant Carrión was not personally involved because other employees merely put her on notice of a decision. However, each of the cases on which Defendants rely to support this argument addressed the second *Colon* factor -- that the defendant failed to remedy a wrong -- rather than the first *Colon* factor alleged here. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 267 (S.D.N.Y. 2014). More directly, in *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997), the plaintiff failed to allege personal involvement where the

- 6 -

Supp. 2d 482, 509 (S.D.N.Y. 2013); *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 441–42 (E.D.N.Y. 2012) (noting that supervisor's knowledge of claimed wrongdoing and ability to take remedial action would constitute personal involvement).

      This does not end the Court's inquiry, however, because "direct participation as a basis of liability in [the equal protection] context requires intentional participation in the conduct constituting a violation of the victim's rights *by one who knew . . . of the facts rendering it illegal*." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (emphasis added) (internal footnote omitted). In other words, a supervisory defendant who participated in achieving an otherwise permissible result cannot be held liable if she was ignorant of the unconstitutional means used to achieve that end. Here, the record shows that Defendant Carrión might have known that Plaintiff was being demoted and might have played a role in that decision, but there is no evidence upon which a reasonable jury could conclude that Defendant Carrión agreed to demote Plaintiff on account of his race or knew that Plaintiff's race was the reason for his impending demotion. *See id.* (stating that "the direct physical participation of the defendant in the constitutional violation is not alone a sufficient basis for holding the defendant liable if the defendant had no awareness or notice of the facts that rendered the action illegal"). Therefore, the Court grants Defendants' motion for partial summary judgment to the extent it is based on the first *Colon* factor because the undisputed facts demonstrate that Defendant Carrión did not directly participate in demoting Plaintiff because of his race.

---

commissioner referred an inmate's appeal letter to a subordinate for determination; there was no allegation that the defendant actually participated in the underlying actions giving rise to the claim. *See also Lloyd*, 43 F. Supp. 3d at 267. Unlike these cases, Plaintiff alleges positive action on the part of Defendant Carrión in the underlying constitutional tort, not merely ignoring or passing along a complaint. *See* Dkt. No 72-2 at 3.

*2. Policy or custom*

Summary judgment is inappropriate if a jury could reasonably find that a defendant "created a policy or custom under which unconstitutional practices occurred or [that she] allowed the continuance of such a policy or custom." *Colon*, 58 F. 3d at 873. Plaintiff claims that Defendant Carrión, "through her words and actions, created an unofficial policy of discrimination against whites in the hiring and firing process, which led to [Plaintiff] being fired despite his exemplary performance and uniformly positive evaluations." *See* Dkt. No 69-26 at 6. Although liability may not be established simply because a defendant was a "policy maker" at the time unconstitutional acts were committed, *see Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000), "where unconstitutional acts are *the result* of a policy promulgated by the defendant, a valid § 1983 action may lie[,]" *Brock v. Wright*, 315 F.3d 158, 166 (2d Cir. 2003). In other words, if a plaintiff establishes that the "'supervisory defendant[] created a policy or custom under which a constitutional deprivation occurred, [he] "must also establish that the supervisor's actions were the proximate cause of the [his] constitutional deprivation."'" *Arbuckle v. City of N.Y.*, No. 14 Civ. 10248, 2016 WL 5793741, *12 (S.D.N.Y. Sept. 30, 2016) (quoting *Marom*, 2016 WL 916424, at *16 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014))); *see also Victory v. Pataki*, 814 F.3d 47, 69 (2d Cir. 2016) (affirming dismissal of claims against Governor Pataki for lack of personal involvement where plaintiff only alleged that Governor Pataki had a blanket policy of opposing parole for violent offenders but did not allege that that policy led staff "to intervene in parole decisions" or to ratify "the rescission procedures employed by the Board of Parole").

The record does not support Plaintiff's accusation that Defendant Carrión created an unofficial policy of unconstitutionally removing white directors. Instead, Plaintiff's alleged

evidence of a discriminatory policy amounts to over-exaggerations, out-of-context statements, and actions that are clearly constitutional. For example, Plaintiff alleges that "white employees and applicants were stereotyped as essentially inbred prison guards." *See* Dkt. No. 69-26 at 13. That statement is ostensibly supported by several employees, but not Defendant Carrión, who used the phrase "good old boy." It is also inaccurate to say that Defendant Carrión "invoke[ed] derogatory stereotypes about rural communities, as 'all related to one another.'" *See id.* at 8. In proper context, that quote referred to Defendant Carrión's contention that she could not change the culture at the Tyron facility because "[i]t's a toxic environment. Some staff have been there for 25 years. They're all related to one another. It's a company town!" *See* Dkt. No. 69-17, Ex. "Q" at 4; *see also* Dkt. No. 66-3, Ex. "B" Hough Depo. at 310:18-314:23 (supporting contention that this statement was not racially motivated).

Furthermore, Plaintiff points to an article published in the *Village Voice* that, according to him, "provided a clear illustration of [Defendant Carrión's] views." *See* Dkt. No 69-26 at 7. In the article, Defendant Carrión is quoted as saying, "When I go to visit facilities, it literally broke my heart to go in and look at these kids that are all black and brown. And I'm thinking, these could be my kids. They look like my son. They look like my nephew. There are all these black and brown faces, and I can't stand it." *See* Dkt. No. 69-17, Ex. "Q" at 7. Plaintiff alleges this quote is evidence that Defendant Carrión placed a great emphasis on race. However, Defendant Carrión made that statement in the context of discussing her upbringing in the Bronx, and it had nothing to do with her views on department policy. *See* Dkt. No. 69-26 at 7-8.

Undeniably, there is evidence in the record to suggest that Defendant Carrión supported hiring minority applicants and generally wanted to see improvement in the way certain upstate facilities handled largely minority juvenile populations, but this does not support the inference

that she "created a policy or custom under which unconstitutional practices occurred." *Colon*, 58 F.3d at 873.

In sum, there is no evidence of a discriminatory policy regarding the removal of directors. To the contrary, with the exception of an email chain regarding the removal of a different director,[4] every other factual assertion deals with the recruitment of diverse individuals, Defendant Carrión's candid observations regarding Defendant OCFS, or her personal background. At most, Defendant Carrión zealously implemented Defendant OCFS's written employment policy encouraging diversity in the hiring process. Therefore, the Court grants Defendants' motion for partial summary judgment to the extent that it is based on the third *Colon* factor because the undisputed facts establish that Defendant Carrión did not create a policy or custom under which Plaintiff was removed from his position as Director of Finger Lakes because of his race.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for partial summary judgment, *see* Dkt. No. 66, is **GRANTED** and Plaintiff's claim against Defendant Carrión is **DISMISSED**; and the Court further

---

[4] Furthermore, the email correspondence regarding the other director is hardly racially charged; rather, Defendant Carrión is comfortable getting rid of that director because he undermined her. *See* Dkt. No. 69-18, Ex. "R" at 2-4.

**ORDERS** that this matter is referred to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 14, 2017
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge