**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**RODNEY WHITE,**

                      **Plaintiff,**

           v.                                           5:11-CV-309
                                                                (FJS/ATB)

**NEW YORK STATE OFFICE OF CHILDREN**
**AND FAMILY SERVICES,**

                      **Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **RIVKIN RADLER LLP**<br>9 Thurlow Terrace<br>Albany, New York 12203<br>Attorneys for Plaintiff | **JOHN F. QUEENAN, ESQ.** |
| **BARCLAY DAMON LLP**<br>80 State Street<br>Albany, New York 12207<br>Attorneys for Plaintiff | **BRIAN M. CULNAN, ESQ.** |
| **CALIHAN LAW PLLC**<br>16 West Main Street<br>Rochester, New York 14614<br>Attorneys for Plaintiff | **ROBERT B. CALIHAN, ESQ.** |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>615 Erie Boulevard West, Suite 102<br>Syracuse, New York 13204-2455<br>Attorneys for Defendant | **TIMOTHY P. MULVEY, AAG** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

In his complaint, Plaintiff alleged claims against Defendant New York State Office of Children and Family Services ("OCFS"), among others, for violating Title VII, 42 U.S.C. § 1983, and the Equal Protection Clause of the United States Constitution arising from his removal as Youth Facility Director of Finger Lakes Residential Center ("Finger Lakes"). After a five-day trial, the jury returned a verdict, dated December 15, 2017, finding that Defendant OCFS had violated Title VII by unlawfully discriminating against Plaintiff when it removed him from his position as Youth Facility Director of Finger Lakes and awarded Plaintiff $1.5 million in compensatory damages.

Pending before the Court is Plaintiff's motion seeking the equitable relief to which he claims he is entitled as a result of the jury's finding of liability against Defendant OCFS. *See* Dkt. No. 108.

**II. DISCUSSION**

**A.**  **Issues on which the parties agree**

The parties agree that the Court should calculate the equitable relief due Plaintiff at the M-4 salary grade level. *See* Dkt. Nos. 108-1 at ¶ 7; 114 at ¶ 5. The parties also agree that the Court should calculate the interest on back pay and back retirement benefits pursuant to 28 U.S.C. § 1961(a). *See* Dkt. Nos. 108-1 at ¶ 22; 114 at ¶ 30.

In addition, Plaintiff consents to Defendant OCFS's calculation of lost wages in the amount of $183,313.68.[1] *See* Dkt. No. 120, Plaintiff's Reply, at 4. Likewise, Plaintiff consents to

---

[1] Plaintiff's expert calculated that Plaintiff had suffered lost wages in the net amount of $180,513.00. *See* Dkt. No. 108-12 (citing Decker Declaration, ¶ 11, Exh. A, p.5, Table 1).

Defendant OCFS's calculation of lost pension income presently due and owing in the amount of $31,149.72.[2]  *See id.*

**B.     Issues on which the parties disagree**

The disagreement between the parties centers on whether the Court should deduct the amount Plaintiff received in workers' compensation from his back pay award and whether Plaintiff should receive lost future pension income in a lump sum, calculated as the present value of lost future pension income, or according to a complicated procedure Defendant OCFS advocates.

*1. Workers Compensation*

"[D]istrict courts of this circuit have generally declined to make the deduction [of unemployment benefits from a Title VII back pay award] by invoking the collateral source rule." *Norris v. New York City Coll. of Tech.*, No. 07-CV-853, 2009 WL 3841970, *1 (E.D.N.Y. Nov. 18, 2009) (citation omitted); *see also Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 258 (2d Cir. 1991) (noting that, "[w]hile collateral source payments do represent an additional benefit to the plaintiff, . . . '[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer'" (quoting *Maxfield v. Sinclair International*, 766 F.2d 788, 795 (3d Cir. 1985) (holding that social security benefits should not be set off from ADEA lost wages award), *cert. denied*, 474 U.S. 1057, 106 S. Ct. 796, 88 L. Ed. 2d 773 (1986)) (other citations omitted)).

---

[2] Plaintiff's expert calculated that Plaintiff had suffered lost pension income as a result of the reduction in wages in the amount of $32,134.00 presently due and owing.  *See* Dkt. No. 108-12 (citing [Decker Declaration,] ¶ 11 & Exh. A, p. 5, Table 2).

"[The collateral source] rule is based on the reality that benefits paid by a third party – a collateral source – will amount to a windfall for the plaintiff if they are not deducted, and for the defendant if they are deducted." *Norris*, 2009 WL 3841970, at *1 (citation omitted); *see also Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 232 (S.D.N.Y. 2001) (stating that "[b]ecause unemployment benefits are paid by a state agency rather than by [defendant] directly, either [plaintiff] or [defendant] will receive this 'windfall' no matter how the benefits are treated. . . . [F]airness dictates that the 'windfall' be awarded to the victim of the discrimination rather than the perpetrator." (citation and footnote omitted)).

"The collateral source rule provides, as a general rule, 'that an injured plaintiff's damages should not be mitigated or reduced based on payments the injured plaintiff received from a source wholly independent of and collateral to the wrongdoer.'" *Battistoni v. Anderson*, No. 08 Civ. 8762 (LMS), 2012 WL 12883777, *6 (S.D.N.Y. Oct. 31, 2012) (quoting *Siracuse v. Program for the Dev. of Human Potential*, 07-CV-2205 (CLP), 2012 U.S. Dist. LEXIS 73456, at *37 (E.D.N.Y. Apr. 30, 2012)). "'The theory behind the rule is that, in fairness, the wrongdoer should not benefit because the plaintiff enjoyed independent contractual or employment rights . . . .'" *Id.* (quoting *Siracuse*, 2012 U.S. Dist. LEXIS 73456, at *38). Furthermore, "'[r]educing a back pay award by amounts that are not paid by the employer makes it less costly for the employer to wrongfully terminate a protected employee and thus dilutes the prophylactic purposes of a back pay award, conferring a windfall to the employer who committed the illegal discrimination." *Id.* (quoting [*Siracuse*, 2012 U.S. Dist. LEXIS 73456,] at *46). Finally, "[a] district court has discretion whether to deduct collateral sources of payment from a back pay award under Title VII." *Id.* (citing *Prince v. Suffolk Cnty. Dep't of Health Servs.*, 99 Civ. 7442 (LAP), 2000 U.S. App. LEXIS 901, at *7 (2d

Cir. Jan. 25, 2000) (citation omitted); *Dailey v. Societe Generate*, 108 F.3d 451, 460 (2d Cir. 1997)).

In this case, Defendant OCFS states that, from September 1, 2011, through February 15, 2012, and from November 1, 2015, through March 27, 2016, Plaintiff was not paid through its payroll, but rather, was paid worker's compensation lost wage benefits by the State Insurance Fund, New York State's workers' compensation insurance carrier. *See* Dkt. No. 114 at ¶ 12 (citing Coonradt Dec., par. 5). Defendant OCFS does not argue that the New York State Insurance Fund is anything other than independent of and collateral to Defendant OCFS. Thus, the Court finds that the collateral source doctrine applies, exercises its discretion in favor of Plaintiff, and "declines to impose an offset that would merely reduce the amount that [Defendant OCFS] [wa]s required to pay for its unlawful conduct[.]" *Siracuse v. Program for Dev. of Human Potential*, No. 07 CV 2205 CLP, 2012 WL 1624291, *15 (E.D.N.Y. Aug. 30, 2012); *see also Norris*, 2009 WL 3841970, at *2 (stating that, "[w]hile it is true that, in some ultimate sense, both City Tech and [New York State Department of Labor] resort to the same State coffers, they are nevertheless separate entities with separate budgets" and "[d]educting [plaintiff's] unemployment insurance benefits from her backpay award . . . [would] thereby relieve[] City Tech of the consequences of its unlawful actions"); *Shannon*, 136 F. Supp. 2d at 232 n.14 (rejecting the defendant's argument that "because it contributes to the general unemployment insurance trust fund from which unemployment benefits are paid such benefits cannot be considered to derive from a 'truly' collateral source"); *Meling v. St. Francis Coll.*, 3 F. Supp. 2d 267, 276 (E.D.N.Y. 1998) (declining to deduct amounts received in disability benefits from the plaintiff's back pay award even though the defendant employer sent premiums to the insurance fund on behalf of all employees).

Alternatively, even if Defendant OCFS had asserted that it was the source of Plaintiff's worker's compensation benefits and that, therefore, those benefits had not derived from a wholly independent and collateral source, the Court would, nonetheless, decline to impose an offset for the worker's compensation benefits that Plaintiff received because "[a]pplication of the collateral source rule depends less upon the source of funds than upon the character of the benefits received." *Ebert v. City of New York*, No. 04 Civ. 9971 (LMM), 2006 WL 3627103, *3 (S.D.N.Y. June 26, 2006) (citation omitted). *Cf. King v. City of N.Y.*, No. 06 Civ. 6516 (SAS), 2007 WL 1711769, *2 (S.D.N.Y. June 13, 2007) (holding that, because the plaintiff's pension was not intended to offset tort liability but rather was enacted out of moral obligation and the interests of the general welfare, the pension is a collateral source covered by the rule).

Finally, Defendant OCFS argues that, if the Court does not deduct the worker's compensation benefits that Plaintiff received from the award of backpay, this will result in a windfall to Plaintiff. That is not necessarily the case. Whether the State of New York will seek to recover a portion or all of the worker's compensation benefits that Plaintiff has received is a matter between Plaintiff, the Workers' Compensation Board, and the New York State Insurance Fund and does not affect Defendant OCFS's liability to Plaintiff as a result of its illegal action. *Cf. In re Conroy*, 30 A.D.3d 841, 842 (3d Dep't 2006) (noting that New York Labor Law authorizes Commissioner of Labor to recoup benefits following "retroactive payment of compensation" by employer); *Ferguson v. Lander Co., Inc.*, No. 3:06-CV-0328 (DEP), 2008 WL 921032, *22 n.37 (N.D.N.Y. Apr. 2, 2008) (stating that "[t]he decision not to reduce the award for economic loss by the amount of unemployment benefits received by the plaintiff will not necessarily result in a windfall to him, at least not in theory, since he may well be obligated to return the unemployment

benefits received by him in place of lost income for which he is now being compensated" (citation omitted)).

### 2. *Lost future pension income*

As noted, Plaintiff seeks lost future pension income in the amount of $443,444, which, he argues, should be paid in one lump sum of $278,839, the present value of the total amount of lost future pension income. *See* Dkt. No. 108-9 at 6. Plaintiff's expert, Kevin Decker, explained the methodology he used to determine these damages as follows:

> In determining [Plaintiff's] lost future period pension benefits, we have taken the following facts and assumptions into consideration:
>
> Had [Plaintiff] been employed as a Youth Facilities Director 4 (M/C, Grade M-4) between September 2010 and his retirement in April 2016, we have calculated that he would have retired with a monthly pension benefit with the New York State and Local Employees' Retirement System of $5,793.40.
>
> The State Retirement System reports that [Plaintiff's] actual monthly pension benefit is $4,186.71.
>
> [Plaintiff's] life expectancy at the date of his demotion was 30.42 years, to age 79.8.
>
> Based on the above, [Plaintiff's] lost future period pension income is calculated as (a) his projected New York State pension based on earnings as a Youth Facilities Director 4; less (b) his projected New York State pension based on earnings as a Youth Counselor 2. The losses total $443,444, with the present value equal to $278,839. . . .

*See* Dkt. No. 108-9 at 6 & n.4 ("The present value has been calculated using a discount rate of 4.5% based on the average historical yield on high-grade municipal bonds.").

Defendant OCFS does not dispute Mr. Decker's methodology nor the result of his calculations. Instead, Defendant OCFS objects to the payment of these benefits as a lump sum and

-7-

explains that the New York State Retirement System is a statutory entity that does not have the authority to pay retirement benefits that are not due and owing. *See* Dkt. No. 114 at ¶ 29. Defendant then suggests a detailed procedure that it argues the Court must take before it can calculate Plaintiff's future pension benefits. Neither Plaintiff nor Defendant OCFS cite any case law to support their respective positions.

The Court finds that, although an award of lost future pension income is required to make Plaintiff whole, a lump sum payment is not necessary under the facts of this case. Rather, the Court will require Defendant OCFS to calculate the salary that Plaintiff would have received as a Youth Facility Director, at the M/C, Grade M-4 level from the time of his demotion in 2010 to the date of his retirement on April 28, 2016, and provide the Court and Plaintiff with a copy of its calculations within twenty (20) days of the date of this Memorandum-Decision and Order. Within ten (10) days of the date of Defendant OCFS's filing of its calculations, Plaintiff must provide the Court and Defendant OCFS with its own calculations if it disagrees with Defendant OCFS's figures or inform the Court and Defendant OCFS in writing that it agrees with those figures.

Once the Court has reviewed Defendant OCFS's calculations and Plaintiff's opposition, if any, to those calculations, the Court will determine the appropriate salary figures. Once the Court has done so, the Court will then require Defendant OCFS to file the necessary forms with the New York State Retirement System so that Plaintiff's future pension benefits will be based on the salary that Plaintiff would have received as a Youth Facility Director at the M/C Grade M-4 level, had he not been demoted in 2010 until the date of his retirement in 2016 with **no** consideration (set off) for the worker's compensation benefits that Plaintiff received. In other words, this calculation shall be made as if Plaintiff had not been injured on the job and, thus, received no worker's compensation

benefits or had to take any time off because of such injuries.

### III. CONCLUSION

Having reviewed the parties' submissions, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion regarding an award of equitable damages is **GRANTED in part, DENIED in part, and RESERVED in part**; and the Court further

**ORDERS** that Defendant OCFS is liable to Plaintiff for lost wages in the amount of **$183,313.68**; and the Court further

**ORDERS** that Defendant OCFS is liable to Plaintiff for lost pension income presently due and owing in the amount of **$31,149.72**; and the Court further

**ORDERS** that Plaintiff's motion that he receive lost future pension income in a lump sum, calculated as the present value of lost future pension income is **DENIED**; and the Court further

**ORDERS** that Defendant OCFS is liable to Plaintiff for lost future pension income; however, the determination of the amount of lost future pension income is **RESERVED**; and the Court further

**ORDERS** that Defendant shall file and serve a letter brief and accompanying explanation of its calculations of what salary Plaintiff would have received as a Youth Facilities Director, at the M/C, Grade M-4 level, from the time of his demotion in 2010 to the date of his retirement on April 28, 2016, within **twenty (20) days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff shall file and serve a letter brief in response to Defendant OCFS's

calculations no later than **ten (10) days** after Defendant OCFS has filed and served its letter brief; and, if Plaintiff disagrees with Defendant OCFS's calculations, Plaintiff shall set forth his calculations with an accompanying explanation as to how he arrived at his salary figures; and the Court further

**ORDERS** that, once both parties have submitted their calculations, the Court shall determine the appropriate salary figures and, once the Court has done so, Defendant OCFS shall file the necessary forms with the New York State Retirement System to ensure that Plaintiff's future pension plan benefits will be based on the salary that Plaintiff would have received as a Youth Facility Director, at the M/C, Grade M-4 level, had he not been demoted in 2010 until the date of his retirement on April 28, 2016, with **no** consideration (set off) of the workers' compensation benefits that Plaintiff received and provide the Court with Plaintiff's new monthly pension benefit so that the Court can prepare the final judgment.[3]

**IT IS SO ORDERED.**

Dated: July 8, 2019
      Syracuse, New York

                                    Frederick J. Scullin, Jr.
                                    Senior United States District Judge

---

[3] Once the Court has determined the appropriate amount of Plaintiff's future pension plan benefits for which Defendant OCFS is liable, the Court will enter a final order and judgment, which shall include the amount of compensatory damages that the jury determined and the amount of equitable relief to which Plaintiff is entitled. The final judgment will also indicate that Plaintiff is entitled to pre-judgment interest and post-judgment interest on the entire award pursuant to 28 U.S.C. § 1961(a).