UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RODNEY WHITE,

                                      **Plaintiff,**

                v.                                              5:11-CV-309
                                                                    (FJS/ATB)

**NEW YORK STATE OFFICE OF CHILDREN**
**AND FAMILY SERVICES,**

                                      **Defendant.**
_____

**APPEARANCES**                                            **OF COUNSEL**

**RIVKIN RADLER LLP**                          **JOHN F. QUEENAN, ESQ.**
66 South Pearl Street, 11th Floor
Albany, New York 12207
Attorneys for Plaintiff

**BARCLAY DAMON LLP**                        **BRIAN M. CULNAN, ESQ.**
80 State Street
Albany, New York 12207
Attorneys for Plaintiff

**CALIHAN LAW PLLC**                          **ROBERT B. CALIHAN, ESQ.**
16 West Main Street
Rochester, New York 14614
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**               **TIMOTHY P. MULVEY, AAG**
**STATE ATTORNEY GENERAL**
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455
Attorneys for Defendant

**SCULLIN, Senior Judge**

## I. INTRODUCTION

       Plaintiff prevailed at trial against Defendant on his claim of racial discrimination under

Title VII; and the jury awarded him $1,500,000.00 in compensatory damages. The Court entered

judgment against Defendant in the total amount of $2,091,966.04, representing compensatory

damages of $1,500,000.00 and equitable relief comprised of a back pay award of $183,313.68, lost pension income of $30,168.60, attorney's fees of $350,573.00, and costs and expenses of $27,910.76.  Thereafter, the Court entered an amended judgment against Defendant in the amount of $2,123,115.76, comprised of compensatory damages of $1,500,000.00, equitable relief in the form of back pay in the amount of $183,313.68, lost pension income in the amount of $61,381.32, attorney's fees in the amount of $350,573.00, and costs and expenses of $27,910.76.

Pending before the Court is Defendant's motion for a new trial, an alteration or amendment of a judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure and for relief from a Judgment or Order pursuant to Rule 60 of the Federal Rules of Civil Procedure. *See* Dkt. No. 133.

## II. DISCUSSION

**A.    Defendant's motion for a new trial**

Rule 59(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a).  However, a motion for a new trial is not "'a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.'"  *Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-cv-01423 (JAM), 2020 WL 614194, *2 (D. Conn. Feb. 10, 2020) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

When analyzing a motion for a new trial, the court "'may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner.'" *Id.* (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (citation omitted)).  Nonetheless, this "is not a permission slip to 'ignore the jury's role in resolving factual disputes and assessing witness credibility.'" *Am Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544 (KAM) (GRB), 2020 WL 5665065, *14 (E.D.N.Y. Sept. 23, 2020) (quoting *Mugavero*, 680 F. Supp. 2d at 558-59 (citation omitted)) (other citation omitted).  Thus, "[a] trial judge 'may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'" *Id.* (quoting *Raedle*, 670 F.3d at 418 (citation omitted)).  In sum, a court "may only grant a motion for a new trial 'if the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice[.]'" *Lundstedt*, 2020 WL 614194, at *2 (quoting *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014)).

The Court has reviewed the parties' arguments and the evidence on which they rely to support those arguments as well as the Court's own recollection of the documentary and testimonial evidence that the parties presented at the trial.  Having done so, the Court concludes that the evidence at trial was more than sufficient to support the jury's conclusion that Defendant discriminated against Plaintiff when it terminated him as Director of Finger Lakes Youth Detention Center.[1]  Therefore, the Court denies Defendant's motion for a new trial.

---

[1] The Court notes that Defendant's reliance on the law-of-the-case doctrine regarding the Court's granting Defendant's motion for summary judgment with regard to the role of then-Defendant Carrion in the decision to terminate Plaintiff from his position is misplaced.  Even if the Court's prior decision regarding Ms. Carrion "'could be considered a finding of fact, the law of the case doctrine does not preclude either party from offering additional evidence on this issue at trial.'" *Nat'l Traffic Serv., Inc. v. Fiberweb, Inc.*, No. 1:08-CV-00262-BRW, 2012 WL 3822165, *2 (W.D.N.Y. Sept. 4, 2012) (quotation omitted).  When the Court granted summary judgment in Ms. Carrion's favor, it based its decision on the record as it existed at that time.  However, at trial, Plaintiff proffered additional evidence that demonstrated that Defendant's administration as

B. **Title VII's statutory cap**

The parties agree that the jury's award of $1,500,000.00 exceeds Title VII's statutory cap of $300,000. *See* 42 U.S.C. § 1981a(b)(3)(D) (providing that, "in the case of a respondent who has more than 500 employees . . . ["the sum of the amount of compensatory damages available shall . . . not exceed"] $300,000"). Accordingly, the Court reduces Plaintiff's award of compensatory damages to $300,000.

C. **New Trial on compensatory damages or remittitur**

"'A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages', *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990), and 'is the process by which a court compels a plaintiff to chose [sic] between reduction of an excessive verdict and a new trial.'" *Dotson v. City of Syracuse*, No. 5:04-CV-1388 (NAM/GJD), 2011 WL 817499, *13 (N.D.N.Y. Mar. 2, 2011) (quoting *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1328 (2d Cir. 1990)). Although "'it is properly within the province of the jury to calculate damages, there is "an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable [persons] may differ, but a question of law."'" *Id.* (quoting *Khan v. Hip Centralized Lab. Servs., Inc.*, 2008 WL 4283348, at *6 (E.D.N.Y. 2008) (citations omitted)). Furthermore, although "'[a] jury has broad discretion in measuring damages, . . . it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket'." *Id.* (quoting [*Khan*, 2008 WL 4283348, at *6] (citation omitted)).

If a court determines that a verdict is excessive, "it may do one of the following: (1) order a new trial; (2) order a new trial limited to damages; or (3) condition denial of a motion for a

---

a whole, including Ms. Carrion, discriminated against Plaintiff.

4

new trial on the plaintiff's accepting damages in a reduced amount." *Dotson*, 2011 WL 817499, at *13 (citing *Thorsen v. County of Nassau*, 2010 WL 2671816, at *11 (S.D.N.Y. 2010) (citing *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005))). However, the trial court does not have the authority, "'where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial.'" *Id.* (quoting *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995) (citing *Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir. 1992))).

"A verdict is excessive if it 'shocks the judicial conscience' and constitutes a denial of justice." *Id.* at *14 (citing *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)). "In determining whether the jury's verdict is excessive, a district court should apply the 'least intrusive standard' possible, 'namely, the maximum amount that would be upheld by the district court as not excessive.'" *Id.* (quoting *Martinez v. Port Auth. of N.Y. and N.J.*, 445 F.3d 158, 160 (2d Cir. 2006)). To decide what an appropriate award should be, the court must consider awards granted in comparable cases, while recognizing that "'no two cases are exactly alike[.]'" *Id.* (citing *DiSorbo*, 343 F.3d at 183); (quoting *Rainone v. Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005)). Furthermore, "[w]hen reviewing the jury's verdict, courts should compare not only the plaintiff's injuries in similar cases, but also the severity of the adverse action." *Id.* (citing *Watson v. E.S. Sutton, Inc.*, 2005 WL 2170659, at *13 (S.D.N.Y. 2005)). Finally, in its analysis, the trial court "is free to weigh the evidence and 'need not view it in the light most favorable to the verdict winner.'" *Id.* (quoting *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-35 (2d Cir. 2002) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998))).

Although there is no requirement that a plaintiff introduce medical or expert testimony regarding his damages, the court must consider the lack of such evidence when assessing

whether the award is reasonable.  *See id.* (citing *Ginsburg v. Valhalla Anesthesia Assocs.*, 1997 WL 669870, at *2 (S.D.N.Y, 1997)).  Furthermore, a court should reduce an award if it is "based upon 'sparse evidence with respect to the magnitude and duration of emotional injury or distress.'"  *Id.* (quoting *Quinby v. WestLB AG*, 2008 WL 3826695, at *3 (S.D.N.Y. 2008)).  Finally, "[w]here emotional distress encompasses humiliation, shame, shock, moodiness and being upset but is devoid of any medical treatment or physical manifestation, it is considered to be 'garden variety'"  *Id.* at *15 (quoting *Gatti v. Cmty Action Agency of Greene County, Inc.*, 263 F. Supp. 2d 496, 512 (N.D.N.Y. 2003)).  "'Garden variety' emotional distress claims generally merit $30,000 to $125,000 awards."  *Id.* (quoting *Olsen*, 615 F. Supp. 2d at 46).

Although the parties agree that Plaintiff's emotional distress claim is a "garden variety" claim, they disagree about where in the range of awards for such claims Plaintiff's damages should lie.  Not surprisingly, Defendant argues that the Court should offer Plaintiff the choice of a new trial on the issue of compensatory damages unless he accepts a remittitur of $30,000, while Plaintiff argues that the remittitur should be at the high end of the range for such a claim, *i.e.*, $125,000.

In determining the reasonableness of the damages award in *Dotson*,[2] the court reviewed factually similar cases in the Second Circuit in the years 2001 to 2011, the date of its decision.  *See id.* at *16.  After reviewing those cases, the court determined that the maximum amount of damages for emotional distress without shocking the judicial conscience ranged from $10,000 to $125,000.[3]

---

[2] In *Dotson*, the jury awarded the plaintiff $175,000 in compensatory damages against the City of Syracuse, $125,000 in compensatory damages against one police officer, and $150,000 in compensatory damages against a second officer.  *See Dotson*, 2011 WL 817499, at *1.

[3] *See Hiller v. Cnty. of Suffolk*, 199 F.R.D. 101 (E.D.N.Y. 2001) (reducing damages award to $20,000 where the jury had awarded each plaintiff $50,000 based on their testimony that they had experienced humiliation, stress, depression, anxiety and embarrassment); *Fink v. New York*,

Comparing these cases to the evidence that the plaintiff had presented at trial regarding her emotional distress, the *Dotson* court noted that

> [t]he evidence at trial failed to establish that plaintiff suffered any permanent emotional injuries, debilitation, physical manifestations or alterations to her lifestyle. . . . Plaintiff did not receive any medical or psychological treatment for her alleged emotional injuries as a result of the retaliation[, and no] experts testified and no medical records were offered or received as evidence to support her claim.

*Dotson*, 2011 WL 817499, at *21.

Furthermore, the court found that the

> [p]laintiff presented no evidence regarding any economic loss including lost time from work or any other income related damages. Plaintiff did not establish that she suffered any change in her job duties or schedule as a result of the retaliatory action [and she] did not testify that the retaliation caused any disruption in her family or personal life.

*Id.* (footnote omitted).

Based on this record, the court, "[a]pplying the 'least intrusive standard', [found that] $50,000 [was] the maximum amount that would compensate plaintiff for her injuries without being excessive." *Id.* at *22.

---

129 F. Supp. 2d 511 (E.D.N.Y. 2001) (reducing award to $125,000 where the jury had awarded the plaintiff $300,000 in damages for emotional distress after the plaintiff and his wife testified about the plaintiff's "image" but the plaintiff did not seek medical help and presented no medical evidence); *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762 (JGK), 2003 WL 22271223 (S.D.N.Y. Sept. 30, 2003) (reducing award to $10,000 where the jury had awarded the plaintiff $140,000 in damages for emotional distress based on the plaintiff's testimony that he felt stressed, nervous, on edge and clammy but admitted he had no trouble eating or sleeping and never consulted a medical doctor or sought psychological help and did not lose his job or suffer any income-related factors); *Rainone v. Potter*, 388 F. Supp. 2d 120 (E.D.N.Y. 2005) (reducing damages award to $50,000 where jury had awarded the plaintiff $175,000 for emotional distress after the plaintiff testified about his emotional state, claiming that his mind was swimming, his future looked extremely grim and he had developed sleeping problems and other manifestations and his wife testified that he was depressed, had difficulty sleeping and was completely distraught and frustrated, but there was no evidence of physical manifestations or debilitating alterations in lifestyle and no evidence of permanency).

Since *Dotson*, other courts have continued to reduce jury awards for emotional distress for garden variety claims to a range of $30,000 to $125,000, and in some cases even below that range. For example, in *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09 Civ. 5378 (RJS), 2011 WL 4549412 (S.D.N.Y. Sept. 27, 2011), which involved a default judgment inquest, the plaintiff sought $250,000 in compensatory damages. The plaintiff stated in her sworn affidavit that she felt "'constantly stressed, nervous and unable to sleep,' . . . dreaded going to work, and felt sick each time [her supervisor] called her into his office." *Id.* at *4 (internal citations omitted). She also stated that "she felt like she was going to have a nervous breakdown after she was moved out of her office, that she lost her self-esteem and self-confidence, . . . that she feared losing her job and felt humiliated . . ., and that, when she was ultimately fired, she was shocked and scared. . . ." *Id.* (internal citations omitted). Finding that the plaintiff's claim could best be categorized as "garden variety," the court concluded that, "because Plaintiff's experience was not 'extraordinary' as that term has been defined in case law, and because she ha[d] presented no medical evidence of her distress, . . . the Court . . . award[ed] Plaintiff compensatory damages . . . limited to $100,000." *Id.* at *5.

In addition, in *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131 (E.D.N.Y. 2013), the plaintiff was employed as a waitress for approximately 22 months, during which time she was repeatedly called racially and sexually derogatory names, asked to perform oral sex on numerous occasions, and was subjected to pervasive lewd behavior. *See id.* at 152-53. When she complained, the defendant's owners refused to help her and, in some instances, punished her. *See id.* After one incident, she was sent home and not allowed to return to work for two weeks. Shortly after she returned to work, she "was pulled down a flight of stairs, cursed at, and ridiculed because she asked her boss about why she was being treated unfairly." *Id.* at 152-53.

The defendant terminated her employment the next day, "specifically because she complained about the unfair treatment." *Id.* at 153. As a result of the defendant's actions, she "suffered emotional distress, humiliation, irritability, weight loss, severe anxiety and depression[,]" which persisted to the day of the court's decision; and "she feared that future employers [would] treat her in a similar manner. . . ." *Id.* (citations omitted).

Given the number of people the defendant employed, it could not be subjected to a compensatory damages award greater than $50,000, which is what the plaintiff sought in her motion for entry of a default judgment. The court concluded that, "[b]ased on Plaintiff's affidavit here, and considering the length of time Plaintiff was employed with Defendant, the duration and severity of the harassing behavior, and the applicable case law, . . an award of $30,000.00 is reasonable to compensate the Plaintiff for her emotional distress claim." *Joseph*, 970 F. Supp. 2d at 154 (citing *Caravantes v. 53rd St. Partners, LLC*, No. 09 Cv. 7821, 2012 WL 3631276, at *22 (S.D.N.Y. 2012) ("garden variety" emotional distress claims may merit an award of $30,000); *Jowers v. DME Interactive Holdings, Inc.*, 00 CIV. 4753, 2006 WL 1408671, at *4 (S.D.N.Y. May 22, 2006) (adopting magistrate judge's award of $15,000 for emotional distress where plaintiff testified that she suffered "continued stress, anger, sadness, and frustration," suffered "an ongoing humiliation," cried most days, was depressed, suffered panic attacks, headaches, nausea, loss of appetite, insomnia and broke out in hives); *Fowler v. New York Transit Auth.*, No. 96 Civ. 6796, 2001 WL 83228, at *13 (S.D.N.Y. Jan. 31, 2001) (reducing emotional distress award from $50,000 to $25,000, where the plaintiff "did not present any evidence detailing the duration or magnitude of his emotional injuries, nor did he present evidence of medical or psychological treatment")).

In a more recent case, *Munson v. Diamond*, No. 15-CV-00425 (DAB) (BCM), 2017 WL 4863096 (June 1, 2017), at a default inquest, the magistrate judge recommended that the court award the plaintiff $15,000 in compensatory damages. *See id.* at *1.  The *Munson* court noted that, in the plaintiff's affidavit, she stated that she "experienced and continue[d] to experience distress, mental anguish, loss of self-esteem, anxiety, disturbed sleep, stomach problems, embarrassment, and migraines.'" *Id.* at *8 (quotation omitted).  She also stated that she "'felt intimidated, abused, anxious, [and] physically ill'" as a result of the defendant's conduct. *Id.*  In part because the plaintiff had only been employed for less than two months, the court concluded that her emotional distress claims were garden variety claims and noted that

> [o]ther courts in this District have awarded emotional distress damages in the range of $15,000 based on similarly general testimony that a hostile work environment caused the plaintiff 'continued stress, anger, sadness and frustration,' and that the plaintiff suffered from depression, panic attacks, headaches, nausea, loss of appetite, hives, and severe bouts of insomnia, even after her employment was terminated.

*Id.* at *8 (quoting *Jowers*, 2006 WL 1408671, at *12 (collecting cases)).  Therefore, the magistrate judge recommended that the district judge award the plaintiff $15,000 in emotional distress damages. *See id.* (citing *Drice*, 2016 WL 1266866, at *7 (awarding $20,000 for emotional distress based on plaintiff's testimony that she "felt then, and still continue[s] to feel offended, disturbed, and humiliated" and "suffered and continue[s] to suffer from severe anxiety and depression" due to defendant's sexual harassment within short period of employment); *Manson v. Friedberg*, 2013 WL 2896971, at *6 (S.D.N.Y. June 13, 2013 (awarding $10,000 for emotional distress for plaintiff's vague and conclusory testimony that she "had low self-esteem, felt 'unworthy' and 'was having a difficult time feeling trust'")).

Finally, in *Small v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-CV-1236S, 2019 WL 1593923 (W.D.N.Y. Apr. 15, 2019), the court found that the jury award of $1.55 million in psychological/physical damages against one of the defendants "shock[ed] the conscience and constitute[d] a denial of justice." *Id.* at *12. However, the court noted that, although remittitur was required, the plaintiff, without question, had "suffered persistent, pervasive, troubling discrimination that no one would remedy, despite her cries." *Id.* Although the court found that the plaintiff had presented an egregious case, it also found that the situation had lasted for months, rather than years. *See id.* The court analogized the case to *Chopra v. Gen. Elect. Co.*, 527 F. Supp. 2d 230, 247 (D. Conn. 2007), which "involve[d] retaliatory treatment over the course of nine months in which the district court upheld the jury's $500,000 award for emotional distress" and to *Ramirez v. N.Y. City Off-Track Betting Corp.*, 112 F.3d 38, 41 (2d Cir. 1997), in which the Second Circuit had "upheld the district court's remittitur of the jury's non-pecuniary, pain-and-suffering award to $500,000" in a case involving discrimination and retaliation that occurred over a period of eight months. *Small*, 2019 WL 1593923, at *12. Consequently, the *Small* court found "that an emotional damages award of $500,000 [was] warranted." *Id.*

After reviewing the factual situations in all of the above-mentioned cases and comparing them to the facts in this case, the Court, applying the "least intrusive standard," concludes that $50,000 is the maximum amount that would compensate Plaintiff for his emotional injuries without being excessive. Therefore, the Court conditionally denies Defendant's motion for a new trial on the issue of compensatory damages on Plaintiff's accepting a remittitur of the compensatory damages award to $50,000.

**D.     Award of attorney's fees in light of remittitur**

In its Order dated October 4, 2019, the Court addressed Plaintiff's request for attorney's fees and costs and expenses.  *See* Dkt. No. 126 at 4.  Defendant partially opposed that motion, arguing that "'the number of compensable hours claimed by plaintiff's counsel are excessive for time spent unsuccessfully defending a motion for partial summary judgment, Plaintiff's counsel is not entitled to full hourly rate for travel time, plaintiff was not a 100% "prevailing party" at trial [and, therefore,] plaintiff should be required to pay 25% of his attorney's fees.'"  *See id.* (quoting [Dkt. No. 113 at ¶ 3]).

After reviewing Plaintiff's submissions, the Court found that the hourly rates he sought for the work of various attorneys, law clerks and paralegals were appropriate and that "the hours those professionals expended on this matter [were] reasonable."  *See id.*

With regard to Defendant's current request that the Court reduce the attorney's fee award by 50% because the Court, at a minimum, should reduce the amount of compensatory damages from $1,500,000 to at least $125,000, the Court denies this request.  First, much of the reduction in compensatory damages is due to the $300,000 statutory maximum for such damages. Furthermore, although the Court has concluded that a remittitur in such damages to $50,000 is appropriate that does not lessen the fact that Plaintiff was the prevailing party on his Title VII claim of discrimination against Defendant.

Moreover, Defendant is seeking a second bite of the apple based on its argument that the Court should reduce the attorney's fee award because Plaintiff did not prevail on other claims. The Court took that factor into consideration in determining the amount of attorney's fees to award Plaintiff, and there is no need to revisit that issue.

For all these reasons, the Court denies Defendant's request to decrease the amount of attorney's fees that the Court previously awarded.

### III. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to reduce the award of compensatory damages to the statutory maximum of $300,000 is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for a reduction of the attorney's fees award is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for a new trial limited to the issue of compensatory damages is **CONDITIONALLY DENIED** subject to Plaintiff's acceptance of a remittitur of the compensatory damages award to **$50,000**. Plaintiff shall notify the Court and opposing counsel in writing within **twenty (20) days of the date of this Memorandum-Decision and Order** whether he will accept this remittitur. If Plaintiff does not accept this remittitur, the Court will schedule a new trial limited to the issue of compensatory damages.

**IT IS SO ORDERED.**

Dated: January 28, 2021
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge